# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Clifford Thomas Shiflet,        )<br>                                          )<br>            Plaintiff,         )<br>                                          )  Civil Action No. 8:18-cv-3260-TMC<br>    v.                                  )<br>                                          )  **ORDER**<br>BASF Corporation,              )<br>                                          )<br>            Defendant.         )<br>_____)| |

Plaintiff Clifford Thomas Shiflet ("Shiflet"), proceeding *pro se*, brought this action against Defendant BASF Corporation ("BASF"), asserting that BASF owes retirement benefits under an employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(b), (e), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the denial of benefits to Shiflet, grant judgment for BASF, and dismiss Shiflet's action. (ECF No. 39 at 28).

## I. Background

The relevant factual and procedural background, gleaned by the magistrate judge from the administrative record and the stipulations of the parties, is thoroughly set forth in the Report, (ECF No. 39), and incorporated herein by reference.

Therefore, the court need not recount the background at length here; for purposes of context, a brief summary will suffice. Plaintiff was employed by BASF from May 1968 to April 1980. *Id*. at 2.[1] In August 2015, Shiflet applied for retirement benefits under the BASF Corporation Salaried Employees' Pension Plan (the "Plan"). *Id*. at 2.[2] The third-party administrator for benefits under the Plan indicated that Shiflet's claim could not be processed because it could not locate any records reflecting that Shiflet was entitled to payments under the Plan. *Id*. at 3. The BASF Human Resources/Benefits Department ("BASF HR") then reviewed Shiflet's claim for pension benefits and, on June 9, 2017, issued a letter of denial explaining that it could find no evidence that he "retained a vested accrued benefit in the Dow Badische plan after [his] termination of employment in May 1980." (ECF Nos. 32-1 at 18; 39 at 3). The letter noted that Shiflet's name "is not included on any of the pension plan census files from Dow Badische Corporation or any other BASF predecessor company" and that Shiflet had "not produced any documentary evidence

---

[1] Shiflet insists that he was employed by BASF. The Report, however, notes that, according to BASF, Shiflet was technically employed by the Dow Badische Company ("Dow Badische"). *Id.* at 2 n.4. BASF is the successor to Dow Badische. *Id*. at 6. The magistrate judge found this technical distinction to be immaterial for purposes of the matter before the court and neither party objects to this finding. *Id*. at 2 n.4.

[2] The Plan began as the Dow Badische Company Employees' Pension Plan, which became effective on January 1, 1976, and was merged into the BASF Corporation Salaried Employees' Pension Plan in 1987. *Id*. at 2.

2

that [he] retained a right to vested accrued benefits under the Plan" such as the statement that Plan participants are issued at termination of employment or the annual notices of "continued participation" that participants receive following separation from BASF. (ECF Nos. 32-1 at 18; 39 at 3).

On June 12, 2017, Shiflet sent a letter challenging the decision of BASF HR, relying in particular on the check box on his 1980 W2 form indicating he was "in the pension plan." (ECF No. 32-1 at 20). On October 18, 2017, the BASF Corporation Pension and Savings Plan Committee (the "Committee") sustained the denial of pension benefits on grounds very similar to those cited by BASF HR—that there was "no evidence for [Shiflet's] entitlement to unpaid accrued benefits, either[] in the records of the Dow Badische Pension Plan or any of its successors, or in the materials submitted by [Shiflet] with [his] appeal." *Id.* at 6. In addition to considering all of the documents Shiflet had previously submitted in support of his claim for benefits, the Committee specifically addressed the 1980 W2 form, explaining that "Form W2 instructions call for the 'Pension Plan' box to be checked if an employee participated for any part of the year in *any* tax qualified pension plan" and that, therefore, the W2 form "does not provide any evidence that [Shiflet] participated in, or accrued a vested benefit under, the Dow Badische Pension Plan" in particular. *Id.* at 5.

3

Shiflet filed this action seeking review of the Committee's denial of benefits. (ECF No. 1). Shiflet and BASF filed stipulations in accordance with the court's case management order, as well as opposing memoranda in support of judgment. (ECF Nos. 23; 32; 34). The magistrate judge then issued the Report recommending that the court affirm the Committee's decision to deny benefits and grant judgment for BASF. (ECF No. 39 at 28). After considering the factors identified by the Fourth Circuit in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000), the magistrate judge determined that the Committee's decision was the result of a deliberate and principled reasoning process and was supported by substantial evidence and, therefore, did not amount to an abuse of discretion. *Id*. at 20–28. The magistrate judge considered and rejected Shiflet's arguments that there was sufficient evidence to support the award of retirement benefits, finding specifically that his W-2 forms do not show entitlement to benefits under the particular BASF plan at issue, *id*. at 25–26, and that Shiflet's 1973 statement of benefits from the company did not prove that a certain amount had been set aside from his salary and contributed to a retirement account, *id.* at 26–27. The magistrate judge found that "the Plan at issue in this case is a non-contributory defined benefit pension plan, meaning that none of Plaintiff's wages were withheld for deposit into the Plan." *Id*. at 27. Because she concluded that the denial of

benefits was not an abuse of discretion, the magistrate judge did not reach the issue of the proper calculation of benefits under the Plan. *Id*. at 28.

## II.  Standard of Review

The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). Nevertheless, "[t]he district court is only required to review de novo those portions of the report to which specific objections have been made, and need not conduct de novo review 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.'" *Farmer v. McBride*, 177 Fed. App'x 327, 330–31 (4th Cir. April 26, 2006) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)).  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, "[i]n the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation." *White v. Stacher*, C/A No. 6-05-1737-GRA-WMC, 2005 WL 8163324, at *1 (D.S.C. Aug. 29, 2005) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id*. at 662

n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge").

### III. Analysis

Shiflet filed a voluminous set of objections, the great majority of which repeat claims and arguments previously addressed by the magistrate judge. (ECF No. 43).[3] Additionally, a number of these objections simply point out matters in the Report that are immaterial to the magistrate judge's analysis and recommendations to this

---

[3] The court notes that Shiflet filed numerous additional documents with the court. (ECF Nos. 49-56). As these were outside of the time for filing objections, however, they were not considered.

court.[4]  Liberally construing the remaining objections, however, the court rules as follows.

First, throughout his objections, Shiflet refers to BASF's two settlement offers—which he rejected—in the apparent belief that BASF thereby conceded that Shiflet was entitled to retirement benefits under the Plan and that the sole issue before the court was the proper calculation of those benefits. (ECF No. 43 at 2–4, 6). Settlement offers, however, are merely offers to compromise—they are not admissible at trial to establish liability. *See* Fed. R. Evid. 408(a) (settlement offers may not be used "either to prove or disprove the validity or amount of a disputed claim").  "The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions." *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988).  The court notes that one of the settlement offers rejected by Shiflet was an offer of judgment pursuant to Rule 68. (ECF No. 34-1 at 9).  Like F.R.E. 408, Rule 68 of the Federal Rules of Civil Procedure prohibits the use of an unaccepted offer of judgment to establish liability.  *See* Fed. R. Civ. P. 68(b).

---

[4] For example, Shiflet objects to the statement that he applied for retirement benefits "purportedly after reaching retirement age," noting that there should be no question about his age in light of his submission of his birth certificate. (ECF Nos. 39 at 2; 43 at 1).  Shiflet's claims were not denied based on the conclusion that he failed to obtain retirement age under the terms of the Plan, and neither the Committee nor the magistrate judge suggested otherwise.

Second, Shiflet objects to the magistrate judge's conclusion that substantial evidence supported the Committee's determination that he was not entitled to retirement benefits under the Plan. To the contrary, Shiflet argues that he furnished documents reflecting he is entitled to benefits under the Plan—in particular, a 1973 statement of benefits issued by BASF showing that during 1973, a certain amount of money was allotted for "retirement benefits." (ECF No. 43 at 4). As noted previously, the magistrate judge considered and rejected this argument. (ECF No. 39 at 25–27). The magistrate judge determined that "the Plan at issue in this case is a non-contributory defined benefit pension plan, meaning that none of Plaintiff's wages were withheld for deposit into the Plan." *Id*. at 27. Shiflet does not object to the determination that the Plan at issue is a defined benefit pension plan rather than a dedicated individual account. Rather, Shiflet believes that the magistrate judge missed the thrust of his argument —that the Report finds meaningless the language on Shiflet's individual 1973 statement indicating an estimated annual cost of $294 for "retirement benefits." (ECF No. 43 at 4).

Based on the summary plan description ("SPD") provided by BASF, coupled with the undisputed fact that Shiflet worked for BASF from 1968 until 1980, the court is constrained to conclude that there is sufficient evidence in the administrative record to show that Shiflet is entitled to retirement benefits under the Plan in some amount. The SPD provides that the "Plan for Retirement begins your first day on

the job—there is no waiting period—and it continues for as long as you are a full-time employee of the company." (ECF No. 32-7 at 3). According to the SPD, "Membership in the plan costs you NOTHING" as BASF "pays for everything, and keeps on contributing toward your retirement for as long as you continue to work full-time for the company." *Id.* Under the Plan, "[i]t takes 5 years of credited service to become vested for a portion of your benefit and 10 years to become vested for 100% of your benefit." *Id*. at 4. Further, "no matter what age you leave the company or retire, you're eligible for some benefits as long as you have completed 5 years of credited service." *Id.* Under the Plan, a vested employee may begin receiving retirement benefits "the first day of the month following [his] 65th birthday." *Id*. at 5.

Shiflet presented the Committee with sufficient evidence to establish that he completed 10 years of credited service for BASF and that he has reached retirement age under the terms of the Plan. (ECF No. 32-1 at 5).[5] BASF does not argue to the contrary. Accordingly, it appears to the court that Shiflet's service to the company resulted in his being fully vested in retirement benefits under the Plan. The Committee denied Shiflet's claim for benefits on the grounds that he was unable to produce, and BASF's internal review could not find, any record or statement

---

[5] These documents included Shiflet's birth certificate, his driver's license, federal earned income statements for the years 1968 to 1980, and a ten-year service award from BASF. (ECF No. 32-1 at 5).

specifically indicating the amount of retirement benefits to which he was entitled. *Id*. at 5–6. The Committee noted that, upon separation from employment, an employee should be given such a statement and that after separation, a former employee should receive annual statements of continued participation in the Plan. *Id*. The court is unable to discern from the terms of the Plan, however, any provision that strips an employee of vested retirement benefits for failure to produce such statements. As a result, the court is forced to conclude that the Committee's decision is not supported by substantial evidence.

## IV.  Conclusion

For the reasons set forth above, the court declines to adopt the Report's recommendation that the court find that the Committee's denial of benefits was supported by substantial evidence, (ECF No. 39), and recommits the matter to the magistrate judge for a determination regarding the proper calculation of benefits.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

February 9, 2021
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.